CARROLL, DONALD K., Chief Judge.
One of the defendants in a suit to quiet title has appealed from an adverse final decree entered by the Circuit Court for Volusia County.
On February 20, 1959, the plaintiff filed its complaint in the Circuit Court to quiet title to two parcels of land in a certain subdivision in the city of New Smyrna Beach, Volusia County, alleging that it held title to the two parcels by virtue of certain described conveyances. As to the interest or claim of the appellant-defendant, the plaintiff alleged that on September 1, 1927, one of its predecessors in title made and delivered to the appellant and Mary Freeman a promissory note in the sum of $175.00 payable one year after date with interest at the rate of ten per cent per annum, which note was secured by a mortgage of the same date and recorded on May 2,1928, in the public records of Volusia County, covering part of the first of the two parcels which are the subject of this suit. The plaintiff further alleged that the said mortgage had never been satisfied nor had it been assigned, but that the said mortgage had long since been barred by the statute of limitations of the State of Florida. It alleged that, nevertheless, the said mortgage constituted a cloud on the plaintiff’s title because the appellant had made and asserted a claim against the lands as evidenced by the fact that he had redeemed certain tax certificates in 1932, 1933, 1952, and 1956. The plaintiff also alleged that the said Mary Freeman was deceased.
Testimony was taken by the parties before a Special Examiner, who filed his report of the testimony before the court. During the taking of this testimony the appellant offered in evidence many tax redemption certificates and tax receipts for the payment of city and county taxes on both of the parcels of land involved in this suit. Many of these certificates and receipts covered taxes for years during which the said mortgage was existent and enforceable. These documents were received in evidence over the objection of the plaintiff. The appellant himself testified as follows concerning his payment of the taxes :
“I have paid taxes at least around 30 or 32 years. The party that had the mortgage deserted the property and I had to pay the taxes to try to protect the mortgage. The mortgage has never been paid.”
The appellant also testified that the only work he did on, the land was to “cut the grass around twenty years, nothing else.”
The appellant’s three contentions on this appeal are: that there was insufficient admissible evidence before the court on behalf of the plaintiff upon which the court could grant a decree confirming the title to the premises in the plaintiffs; that the defendant had established adverse possession of the said properties; and the following:
“For the Court to extinguish Defendant’s right or claim in the property in question, and quiet the title of the Plaintiff therein without any reimbursement of the Defendant for the taxes paid by him on the property would *454 amount to an unjust enrichment of the Plaintiff.”
We hold the first two contentions to be without merit, but this last contention raises a point that places this case squarely within one of the most nebulous fields of law and equity in our jurisprudence today — the application of the doctrine of unjust enrichment. Neither party to this appeal has referred us to any Florida decision directly ruling upon the situation confronting us. However, we find some light thrown on this problem by the following language used by the Supreme Court of Florida in the case of Trueman Fertilizer Co. v. Allison, 81 So.2d 734, 737 (Fla.1955), in an opinion written for the court by Mr. Justice Terrell:
“In Florida and most other jurisdictions, it is settled law that one having an interest in real property by lien or in some other manner and is required to pay prior tax liens thereon to protect his interest is not a mere volunteer and is entitled to an equitable remedy against the person who should have paid the taxes. Prudential Ins. Co. of America v. Baylarian, 124 Fla. 259, 168 So. 7; Rives v. Anderson, 128 Fla. 794, 175 So. 897; Federal Land Bank of Columbia v. Brooks, 139 Fla. 506, 190 So. 737; Hollywood, Inc., v. Clark, 153 Fla. 501, 15 So.2d 175; Annotations in 91 A.L.R. 389-393 and 106 A.L.R. 1212-1227. See also 50 Am. Jur., Subrogation, Sec. 40, and Annotation 78 A.L.R. 611 and 612. Section 41, Subrogation, 50 Am.Jur., also enlightens the questions and details the general rule as to advances for benefit of decedent’s estate.
“The doctrine of subrogation is based upon the principle of natural justice and was created to afford relief where one is required to pay a legal obligation which ought to have been met, either wholly or partially, by another. Federal Ins. Co. v. Tamiami Trail Tours, 5 Cir., 1941, 117 F.2d 794. Applying that rule here, one is driven to the conclusion that the claimant is entitled to be reimbursed by the holder of the beneficial title, and for that purpose he should in equity be entitled to a lien against that interest of decedent.”
In the Allison case the plaintiff corporation instituted a suit against the defendant, Ethel Mae Allison, as the administratrix of the estate of Wise Perry, deceased, and as an heir of the said Perry, to foreclose a lien arising from the plaintiff’s redemption of certain tax sales certificates against certain lands. The complaint alleged that the said Perry died intestate in 1930 and that an administrator and later the ad-ministratrix of his estate were appointed but no inventory was filed, no accounting was made, and apparently the estate was not administered. The plaintiff filed its claim against the estate based on notes due it by the deceased, Perry. Among the assets of the estate was all the capital stock of the Perry Realty Co., except one share, which company was dissolved in 1936 for failure to pay the corporation stock tax. Distribution of the assets of the corporation and the stock owned by the estate had not been made. The complaint further alleged that as a matter of law the title to the lands of the Perry Realty Company vested in the administrator and later in the defendant-administratrix. Taxes on the real estate owned by the dissolved corporation were not paid in 1938 and consequently tax certificates were issued and sold in 1939. In August, 1941, the plaintiff’s claim against the estate not having been paid, it purchased the tax certificates for $407.08 for the purpose of protecting its claim.
The Supreme Court in the Allison case said that the real point for its determination was whether the plaintiff “had such an interest in the lands of the dissolved corporation as would entitle it under the theory of subrogation to redeem the tax certificates and not be classed as a mere volunteer without equitable remedy.” The Circuit Court answered this question in the negative and dismissed the complaint without leave to amend. The Supreme Court, after set *455 ting forth its reasoning as quoted above, held that the equities compelled a reversal of the decree appealed from, and finally reversed the said decree.
In a factual situation more closely anal-ogizable to that of the present case, involving the payment of taxes by a mortgagee, the Supreme Court in H. K. L. Realty Corporation v. Kirtley, 74 So.2d 876, 878 (Fla.1954), held that the twenty year statute of limitations applicable to mortgages did not apply to the amount paid by a mortgagee for taxes on the mortgaged property since that was not a part of the original mortgage debt, and the mortgagee was entitled to recover that amount in a mortgage foreclosure suit commenced more than twenty years after the maturity of the secured debt. Quoting from its earlier opinion in Federal Land Bank of Columbia v. Brooks, 139 Fla. 506, 190 So. 737 (1939), the Supreme Court of Florida said: “ ‘The amount thus expended for payment of taxes by the mortgagee was an expenditure which the mortgagee was forced to make by reason of the neglect of the mortgagor to carry out his covenant to pay all taxes as they became due. Under these circumstances the mortgagee is entitled to be subrogated to the paramount lien of the State, as to which the statute of nonclaim does not apply.’ ” See also Prudential Insurance Co. of America v. Baylarian, 124 Fla. 259, 168 So. 7 (1936).
This rule recognized by the Supreme Court of Florida in the Kirtley and previous cases was the prevailing law in this state until 1955, when the Florida Legislature enacted Chapter 29977, which is discussed and quoted from below. This act became a law on June 23, 1955.
At the time the Supreme Court rendered its decision in the Kirtley case, Section 95.28 of the Florida Statutes, F.S.A., read as follows:
“The lien of a mortgage or other instrument encumbering real estate (hereinafter referred to as mortgage), except mortgages and liens specified in § 95.32, shall terminate and no action or proceeding of any kind shall begin to enforce or foreclose the mortgage after the expiration of the following periods, unless an extension of any such period shall have been effected in the manner provided in § 95.29:
“(1) If the final maturity of an obligation secured by a mortgage is ascertainable from the record of the mortgage, the period of limitation shall be twenty years after the date of such maturity.
“(2) If the final maturity of an obligation secured by a mortgage is not ascertainable from the record of the mortgage, the period of limitation shall be twenty years from the date of the mortgage.”
In 1955 the Legislature enacted Chapter 29977, Section 1 of which added the following two paragraphs to Section 95.28, Florida Statutes, F.S.A.:
“(3) In all such obligations, including taxes paid by the mortgagee, the period of limitation shall be twenty years; provided, however that a mortgagee shall have no right of subrogation to the lien of the state, for taxes paid by said mortgagee to protect the security of his mortgage unless said mortgagee obtains an assignment from the state of the tax sales certificate, and, provided, further that the mere redeeming of the tax certificate shall be insufficient for such subrogation purposes.
“If any provision of this section, or the application thereof to any set of circumstances, shall ever be held by a court of competent jurisdiction to be invalid or ineffective for any reason, such holding shall not affect the applicability thereof to other circumstances, nor affect the remaining provisions hereof.”
It would be interesting to speculate whether the Legislature enacted Chapter *456 29977 as a result of the Kirtley decision, which was entered the preceding year, but it is not necessary for us here to indulge in such speculation, for, regardless of the motivation for the enactment, Chapter 29977 did undoubtedly have the effect of modifying the rule recognized in that decision.
Applying to the instant case the provisions of Chapter 29977, which became the law of Florida on June 23, 1955, the appellant had no right of subrogation to the lien of the state for taxes which he paid on or after June 23, 1955, unless he obtained an assignment from the state of the tax sales -certificate and unless he did more than merely redeem the tax certificate. While the application of the rule in the Kirtley case to tax payments made by the appellant on the land secured by his mortgage prior to the mentioned date and the application of the said statute to such payments made thereafter might seem illogical to the lay mind, the answer is, of course, that ours is a government of laws and not of men and that the duty of the courts is to apply the law fairly and accurately in a given factual situation, regardless of whether the money involved seems large or small.
Applying the above to the facts in the case at bar, we think that the appellant, as the mortgagee under the mortgage covering part of the first parcel, had such an interest in such mortgaged realty as authorized his payment of taxes to protect his security, and that he is entitled to an equitable lien on the first parcel- — -that is, in the amount only of the taxes on the said parcel which he paid prior to June 23, 1955, while his mortgage was good and enforceable, and the evidence shows there were such payments. We do not think he is entitled to a lien for the taxes which he paid on the second parcel, in which he held no mortgage or other interest that would justify his paying the taxes; nor do we think he is entitled to a lien for the value of his services rendered in cutting the grass of the two parcels.
Since the chancellor in the final decree appealed from held in effect that the appellant had no lien or other interest in the two parcels which are the subject of this suit to quiet title, that decree must be and is reversed and the cause is remanded for further proceedings consistent with the views herein expressed.
Reversed and remanded with directions.
STURGIS and WIGGINTON, JJ., concur.